**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LENELLE GRAY,** | : | **Civil No. 1:10-CV-1772** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Lenelle Gray, a federal inmate in the custody of the Bureau of Prisons, brought the above-captioned action against the United States of America pursuant to the Federal Tort Claims Act.  Gray's claims arise from an August 14, 2009, incident at the United States Penitentiary in Lewisburg, Pennsylvania, during which Gray was slashed with a razor by his cell mate, Andrew Bennett, resulting in Gray sustaining multiple lacerations on his face and torso, which required dozens of stitches to close. Gray alleges that the United States is liable for this attack, arguing that prison personnel were negligent in furnishing Gray's cell mate with the razor that was ultimately used as weapon, and in failing to collect the razor in accordance with mandatory prison policies governing the provision and collection of razors given to inmates for shaving.

This matter now comes before the court on the defendant's motion to dismiss the complaint, or alternatively, for summary judgment on Gray's claims. For the reasons that follow, we recommend that the motion be denied.

## II.  FACTUAL BACKGROUND

Lenelle Gray is in federal custody following his conviction in the Northern District of Ohio for offenses relating to using a firearm in relation to a drug trafficking crime. Gray was sentenced to an aggregate term of imprisonment of ten years, ten months for this conviction, and is scheduled to be released from his federal sentence on October 5, 2015. (Doc. 55, Defendant's Statement of Fact ¶ 1) (hereafter "Def. SMF ¶ __.")  On August 14, 2009, Gray was confined in the special management unit at the United States Penitentiary in Lewisburg, Pennsylvania. (Id. ¶ 2.)  Gray has since been transferred to the United States Penitentiary in Florence, Colorado. (Id. ¶ 3.)

USP-Lewisburg began accepting inmates into a "special management unit" program in 2009. (Id. ¶ 30.)  Between 2002 and 2009, the SMU program was confined to one housing unit at the prison, which held approximately 100 inmates who were participating at any given time. (Id. ¶ 32.)  Federal inmates may be designated for SMU programming if they have participated in disruptive geographical group or gang-related activities; if they had a leadership role in disruptive

geographical group or gang-related activity; or if they have a history of serious or disruptive disciplinary infractions while incarcerated. (Id. ¶ 31.)

In 2009, the Bureau of Prisons expanded the SMU program at USP-Lewisburg and it became an institution-wide program, which currently houses approximately 1,200 inmates who are participating in the SMU program. The prison also has approximately 200 inmates who are in general population who serve as a work cadre for the institution. (Id. ¶ 33.)

Plaintiff Lenelle Gray and another inmate, Andrew Bennett, were designated for SMU assignment and were both housed at USP-Lewisburg in 2009. On August 14, 2009, Gray was housed with Bennett in Z-Block at USP-Lewisburg. (Id. ¶ 4.) Bennett was assigned to a cell on the first floor of the Z-Block from June 18, 2009, through the day of the August 14, 2009 assault. (Id. ¶ 6.) Gray was assigned to a cell on the first floor of Z-Block from July 2, 2009, through the day of the August 14, 2009 assault. (Id. ¶ 7.) The two men were housed in the same cell, Z-121, from July 27, 2009, through August 14, 2009. (Id. ¶ 8.)

Correctional Officer Scott Blue was assigned to the Z-Block evening watch as the First Floor Number One Officer, where Gray and Bennett were housed, from June 21, 2009, through September 21, 2009, with Saturdays and Sundays as his days off. (Id. ¶ 5.)

Inmates in the SMU at USP-Lewisburg are permitted to use razors to shave three times per week. (Id. ¶ 9.) Correctional Officer Blue was responsible for passing out razors to the inmates in the Z-Block on Mondays, Wednesdays, and Fridays. (Id. ¶ 10.) Officer Blue has submitted a declaration in which he attests that it was his practice to walk down the range on the cell block with a box of razors on a cart and stop at each cell to ask the inmates if they wanted a razor to shave. (Id. ¶ 11.) Office Blue represents that when he would distribute and collect razors, he would carry with him a list of inmate names on a form referred to as a "shower sheet." (Id. ¶ 12.) Officer Blue would provide a razor to an inmate and then place a check mark beside the inmate's name on the shower sheet.[1] (Id. ¶ 14.)

Approximately one hour later, Officer Blue would reverse this process, and collect a razor from each inmate who received one. (Id. ¶ 15.) Each time an inmate would return a razor to him, it was Officer Blue's practice to make certain that the blades were intact and to place an "X" beside the inmate's name who returned the razor. (Id. ¶ 16.) According to Officer Blue, he cannot recall any occasion when he was unable to collect all of the razors he passed out. (Id. ¶ 17.) However, if an

---

[1] According to Gray's complaint, on Z-Block inmate showers are located within the cells, and, therefore, Officer Blue would provide razors to the inmates within their cells for use in connection with showering. (Doc. 1, at 3.)

4

inmate had refused to return a razor, Officer Blue states that he would have notified a lieutenant, and an incident report would have been issued. (Id. ¶ 18.)

In his complaint, Gray alleges that he and Bennett notified a correctional officer on the morning of Friday, August 14, 2009, that they were not getting along, that they needed to be separated, and that Bennett was going to harm Gray. (Doc. 1, at 2.) According to Gray, the correctional officer responded that there was nothing he could do to address the situation, other than to notify the lieutenant. (Id.) The lieutenant never came to speak with either Gray or Bennett about the issue. (Id.) Later that same day, Gray and Bennett notified Officer Blue that they were continuing to have problems and that they wanted to be separated before Bennett harmed Gray; according to Gray, Bennett told Officer Blue that he wanted to be separated from Gray before he did "something stupid and hurt somebody." (Id.) Upon receiving this information, Officer Blue told the inmates that the lieutenant had stated that he would have to wait until Monday to address the celling issue, when the Unit Team returned.[2] (Id.) Gray reiterated to Officer Blue the seriousness of the situation, and emphasized that he felt in imminent danger being confined with Bennett, who was repeatedly making threats against him. (Id.)

_____

[2] In the SMU, inmates are confined to their cells for 23 hours per day, with one hour allotted for outside recreation in a cage. (Doc. 1, at 3.)

On the evening of August 14, 2009, shortly after 6:30 p.m., and apparently after Gray and Bennett had notified him that they were at risk of having a physical altercation, Officer Blue was handing out razors to inmates who wished to shave. (Def. SMF, ¶ 21; Doc. 1, at 2.) When he arrived at Gray's and Bennett's cell, Officer Blue asked whether the men wanted razors; Gray indicated that he did.[3] (Doc. 1, at 2.) When Officer Blue opened the food slot to the inmates' cell, Bennett struck Gray in the face with a razor, and the men immediately began to exchange blows and to wrestle. (Id.; Def. SMF ¶ 21.) Officer Blue closed the food slot and called for assistance to help break up the fight. (Id.) He then opened the floor range door to allow responding staff into the unit. (Def. SMF ¶ 21.)

Correctional Officer Justin Foura was assigned to the second floor of Z-Block at USP-Lewisburg during the evening watch shift. (Id. ¶ 22.) Officer Foura responded to Officer Blue's assistance call regarding the fight between Bennett and Gray. (Id. ¶ 23.) When he arrived at the cell, Officer Foura observed that Gray and Bennett were standing face to face, and both men were covered in blood. (Id.) Gray was bleeding from his face and the left side of his stomach, and was seen holding a rolled up newspaper in the form of a night stick. (Id.) Officer Foura ordered the men

---

[3] In his declaration, Officer Blue attested that Gray indicated that both he and Bennett wanted razors. (Def. SMF ¶ 21.)

to separate and get down on the floor, but according to his version of events, neither inmate moved. (Id.) The officers dispensed pepper balls into the cells, releasing chemical agents. Thereafter, the inmates submitted to restraints. (Id.) During the altercation, Officer Foura observed Bennett flush a razor blade down the toilet. (Id.)

Lieutenant Tracey Hooper was assigned to Evening Watch Operations at USP-Lewisburg on August 14, 2009. (Id. ¶ 24.) Lieutenant Hooper also responded to Officer Blue's call for assistance. (Id.) Lieutenant Hooper attests that when he arrived at cell 121, he witnessed the inmates engaged in a fight, and ordered them to submit to handcuffs. (Id. ¶ 26.) Lieutenant Hooper states that the men refused, and that Bennett subsequently attempted to block the food slot with a mattress. (Id.) In spite of this, however, Lieutenant Hooper represents that he was able to launch multiple rounds into the cell with a pepperball launcher, which eventually caused the inmates to comply with demands to separate and submit to restraints. (Id.) Lieutenant Hooper also saw Bennett flush a weapon down the toilet during this incident. (Id.)

According to Gray and medical reports that the parties have submitted, during this affray, Gray sustained multiple lacerations to his torso and face, of varying degrees of severity. In total, Gray avers that his wounds required 70 stitches, and he

was taken from USP-Lewisburg to an outside hospital after prison medical staff concluded his injuries were too serious to be treated within the institution.

In this lawsuit, Gray alleges that Officer Blue – the corrections officer who had sole responsibility for distributing and collecting razors on Z-Block – negligently permitted Bennett to obtain and retain the razor that was ultimately used in the August 14, 2009 incident. In the complaint, Gray avers that in late July 2009, a corrections officer was slashed by an inmate who had secreted a razor in his cell. Following this incident, corrections officers subjected Z-Block to a thorough search in order to find and remove weapons and contraband. Gray alleges that sometime after this unit-wide search was undertaken, Officer Blue negligently permitted Bennett to retain the razor that he ultimately used to inflict multiple lacerations on Gray during their affray on August 14, 2009.[4]

Following the fight, Bennett was issued an incident report that charged him with a Code 101 violation of assault and a Code 104 violation of possession of a weapon. (Def. SMF ¶ 27.) During his hearing on these charges, Bennett claimed that

---

[4] Gray has subsequently submitted a declaration in which he swears that Bennett obtained the razor in this way. (Doc. 60, Ex., Declaration of Lenelle Gray.) For his part, Corrections Officer Blue has submitted a declaration in which he claims that he cannot recall any time during which Bennett was housed on his floor in Z-Unit when Officer Blue would have notified a lieutenant that an inmate had refused to return a razor. (Def. SMF ¶ 19.)

Gray had first attacked him with the razor blade, which was initially in Gray's possession, but that somehow Bennett managed to take the razor blade from Gray during the fight and thereafter managed to slash Gray's face with it. (Id.) Regardless of his characterization of the fight, Bennett was found guilty of the charged offenses and was sanctioned with prison discipline as a result.

The United States has submitted a declaration from Suzanne Heath, a Special Investigative Agent at USP-Lewisburg, in which she observes that inmates within the institution routinely demonstrate creativity in making weapons from various sources, and that staff at the prison have found weapons in a variety of places, including on the person of inmates, in cells, in common areas throughout the institution, education areas, dining halls, chaplain, and health services. (Def. SMF ¶¶ 35-37.) Although BOP attempts to control the production and availability of weapons through a variety of techniques, the Bureau is not always successful in preventing the introduction of weapons within its institutions. (Id. ¶ 38.)

## III.  **PROCEDURAL HISTORY**

Gray initiated this lawsuit on August 24, 2010. (Doc. 1.) In the complaint, Gray alleged: (1) that BOP officials were negligent in failing to separate or protect him from Bennett after being notified by the inmates on multiple occasions that they were having difficulty and that a fight was imminent; and (2) that Correctional

Officer Blue was negligent in failing to collect a razor from Bennett at some point prior to August 14, 2009, which Bennett then used to slash Gray multiple times during the August 14, 2009 affray.

On January 26, 2011, the United States moved for summary judgment on these claims. (Doc. 20.) On August 17, 2011, a magistrate judge previously assigned to this action issued a report and recommendation in which he recommended that the motion for summary judgment be granted as to the first claim, but denied as to the second claim. (Doc. 31.) The district court subsequently entered an order granting summary judgment in favor of the United States on both claims, finding that the plaintiffs FTCA claims were barred by the discretionary function exemption, which provides that the FTCA's waiver of sovereign immunity does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The district court found that the discretionary function exemption barred Gray's claims regarding both the alleged failure to separate Gray and Bennett, and Officer Brown's alleged failure to retrieve a razor blade from Bennett on a date prior to August 14, 2009.

Gray appealed this decision to the United States Court of Appeals for the Third Circuit. In a non-precedential decision, the appeals court held that the collection of razors dispensed to inmates was not a matter of discretion, but was instead controlled by BOP policies mandating the collection of razors in accordance with certain express procedures. Accordingly, the Third Circuit held that the discretionary function exemption of the FTCA did not apply to Gray's claims against the United States based upon Officer Blue's alleged negligence. Thus, the appeals court vacated the district court's decision with respect to Gray's tort claim based upon Officer Blue's conduct, but otherwise affirmed the dismissal of Gray's claim against the United States based upon the alleged failure of correctional officers to separate Gray and Bennett. See Gray v. United States, No. 11-3918, 2012 WL 2384251 (3d Cir. June 26, 2012).

With the matter remanded to the district court, the United States once again moved to dismiss the complaint, or, in the alternative, for summary judgment on Gray's remaining claim regarding Officer Blue's alleged negligence in failing to recover a razor from Bennett. (Doc. 51.) In the brief filed in support of the motion, the government contends that notwithstanding the Third Circuit's ruling, dismissal of Gray's remaining claim is nevertheless warranted because Gray's claim relies exclusively on a prison policy at USP-Lewisburg for which there is no corresponding

duty under Pennsylvania law. Alternatively, the United States argues that Gray has failed adequately to plead a claim for negligence, and the record evidence in the case does not establish a prima facie claim of negligence. In response, Gray maintains that his claim is appropriately pled, and is supported by sufficient evidence to present a triable issue. The motion has been fully briefed and has been committed to this court for purposes of issuing a report and recommended disposition.

Upon consideration, we disagree with the United States that Gray has not adequately pled a claim under the FTCA, and we disagree that Gray's claim must be dismissed because it is predicated entirely upon the alleged violation of a BOP policy for which there is no state law analogue. We also find that Gray has identified disputed issues of material fact that preclude summary judgment in this case, including evidence set forth in Gray's own declaration. Accordingly, we will recommend that the district court deny the defendant's renewed dispositive motion.

## IV.  STANDARDS OF REVIEW

The United States seeks judgment in its favor either through an order dismissing the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or through summary judgment entered pursuant to Rule 56. The standards governing each basis for relief are summarized below.

## A.    Motion to Dismiss - Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

## B.    Summary Judgment - Rule 56

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment,

identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). In order for an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this initial requirement is met, the burden then shifts to the non-moving party to demonstrate the existence of a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460–61 (3d

Cir. 1989). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable interests in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott, 550 U.S. at 380).

## V.  DISCUSSION

### A.  Gray Has Not Brought a Claim for Negligence Per Se, and Has Otherwise Adequately Pled a Claim for Negligence

The United States enjoys sovereign immunity from suit, except where that immunity is expressly waived. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). Under the FTCA, the United States has waived sovereign immunity for claims related to injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1).

As noted above, following the decision of the United States Court of Appeals for the Third Circuit, there remains but one claim in this lawsuit, namely, Gray's allegation that Correctional Officer Scott Blue was negligent in failing to retrieve a

razor blade from Gray's cell mate, which was ultimately used in the August 14, 2009, fight during which Bennett attacked Gray. In the motion now before the court, the United States argues that this claim simply fails as a matter of law. In short, the United States contends that the "plaintiff has failed to state a claim of negligence based on that discrete act." (Doc. 56, at 13.)

In support of its argument, the government relies principally on the Third Circuit's holding that the BOP has "a mandatory policy requiring that razors be accounted for and disposed of at the end of a shower." (Id., at 14.) (quoting Gray v. United States, No. 11-3918, 2010 WL 2384251, at *3 (3d Cir. 2012)). Having so found, the Third Circuit further held that "[b]ecause a 'policy specifically prescribed the course of action for [prison staff] to follow,' the task of collecting razors does not involve an element of judgment or choice and the discretionary function exception is inapplicable." Id.

As we view it, the Third Circuit's ruling was restricted to an analysis of whether the discretionary function exception to the FTCA applied to Officer Blue's obligation to collect razors in accordance with BOP policies, an issue upon which the government did not prevail. However, the United States interprets the Third Circuit's holding broadly and optimistically in a way that would construe Gray's tort claim as being predicated solely on the alleged failure of Officer Blue to adhere to BOP

policies in collecting razors. In so doing, the United States essentially interprets the remaining claim in this case as constituting a claim of negligence per se. Starting from this interpretation, the government then proceeds to argue that Gray's negligence claim fails as a matter of law because Pennsylvania state law does not impose an analogous duty on private individuals – something that the government notes is generally required before the United States may be liable in tort under the FTCA. Thus, the government construes the Third Circuit ruling, which denied summary judgment to the government on the FTCA discretionary function exemption, as an opinion which actually, albeit silently, compelled summary judgment in favor of the defendant on other, wholly unspoken, grounds.

We believe that this argument both misconstrues the scope of the Third Circuit's holding and misinterprets that nature of the plaintiff's remaining claim. The FTCA makes the United States liable for tortious acts or omissions committed by its agents "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, a plaintiff suing the United States under the FTCA must state a claim under Pennsylvania law, or otherwise point to a state-law analogue to support a claim against the government. See Cecile Industries, Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986). For this reason,

courts have found that where a plaintiff's claim of negligence is predicated solely on the failure of the United States to comply with a federal statute or regulation, the FTCA will often be found inapplicable. Id.; see also Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997) ("It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty in the conduct of its own affairs.") (internal citations omitted); Delta Savings Bank v. United States, 265 F.3d 1017, 1026 (9th Cir. 2001) ("To bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from federal law.").

In the instant case, the United States refers the court to an unpublished decision from the Eastern District of Pennsylvania, Bistrian v. Levy et al., No. 08-3010, 2010 WL 3155267 (E.D. Pa. July 29, 2010), which the government represents is "[t]he case most closely on point on this issue." (Doc. 56, at 15.) In Bistrian, the plaintiff, a pre-sentence inmate, brought suit against the United States, alleging that the United States was liable for the negligence of certain prison officers for their violations of various BOP regulations and requirements. Id. Specifically, Bistrian argued that the United States was liable for negligently allowing him to be confined in the special housing unit of the Federal Detention Center in Philadelphia, Pennsylvania, after which he was beaten by other inmates confined in that unit. Bistrian claimed that the United

States was liable for the violation by prison personnel of fifteen separate prison regulations, which he claimed were mandatory, and which resulted in his wrongful confinement in the SHU.

The district court found that the alleged violation of numerous mandatory prison regulations in and of itself was not actionable under the FTCA:

> The FTCA only applies where the negligent government employee has a duty under state tort law. No Pennsylvania law exists that imposes liability in tort for negligence in violating BOP (federal) regulations. The Third Circuit has held on several occasions that violations of federal regulations are not applicable under the FTCA. Moreover, even Pennsylvania statutes are not always enforceable in tort.

Id. at *9. In addition to Bistrian, the United States has cited to decisions of other circuit courts of appeal, holding generally that the FTCA does not embrace claims that are based solely on alleged violations of federal statutes, where there is no comparable private liability under state law. (Doc. 56, at 16-17.) In Bistrian and the cases on which the government relies, the plaintiffs appear to have been attempting to bring claims for negligence per se, or predicating their claims solely upon an alleged violation of a federal statute or regulation.

In some contexts, Pennsylvania law does recognize negligence per se as a kind of tort liability. Under the Pennsylvania doctrine of negligence per se:

> a violation of a statute may be grounds for finding that defendant is per se liable. To assert a claim for negligence per se, the plaintiffs must

demonstrate that: 1) the statute or regulation clearly applies to the conduct of the defendant; 2) the defendant violated the statute or regulation; 3) the violation of the statute proximately caused the plaintiff's injuries; and 4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually, as opposed to the public.

Mest v. Cabot Corp., 449 F.3d 502, 518 (3d Cir. 2006) (citing Wagner v. Anzon, Inc., 684 A.2d 570, 574 (Pa. Super. Ct. 1996)).  See also Cecile Industries, Inc., 793 F.2d at 99 (FTCA case) ("The failure to follow a federal regulation may be negligence per se 'if, under state law criteria, it may be considered the kind of . . . regulation of which is negligence per se.'") (quoting Schindler v. United States, 661 F.2d 552, 560-61 (6th Cir. 1981).

In Cecile Industries, the plaintiffs – a manufacturer of clothing and equipment for the United States government, and the company's president and sole shareholder – brought suit alleging negligence per se under the FTCA.  793 F.2d at 98. Specifically, the plaintiffs argued that the Defense Personnel Support Center, an agency of the Department of Defense, caused them to be *de facto* debarred from bidding on government contracts without notice and without opportunity to present evidence.  Id.  The government moved to dismiss for lack of subject-matter jurisdiction, arguing that because *de facto* debarment is not a tort recognized by Pennsylvania common law, it is not cognizable under the FTCA.  Id.  The Third Circuit agreed, finding that:

> [e]ven if the regulations requiring notice and an opportunity to present evidence were not followed in the period before debarment proceedings were instituted, plaintiffs have not shown that the failure to follow such procedures constitutes negligence under Pennsylvania law. The only state law tort that might arguably have been violated, misrepresentation, is explicitly excepted from the grant of jurisdiction by the Federal Tort Claims Act. The government has not waived its sovereign immunity in that respect.

Id. at 100 (internal citation omitted).

However, unlike the foregoing cases, in the instant case we do not understand the plaintiff to be bringing a claim for negligence per se. Instead, the plaintiff has brought a claim for general negligence against the United States under a common law tort theory, based upon his allegation that Corrections Officer Blue was negligent in permitting Andrew Bennett to retain and secrete a razor that Officer Blue had distributed to Bennett at some unknown time before August 14, 2009. Although it is true that the plaintiff has observed that under BOP policies, Correctional Officer Blue had an affirmative obligation to retrieve razors that were furnished to inmates wishing to shave, the plaintiff has not contended that Officer Blue's alleged failure to adhere to BOP policies constitutes negligence per se.[5] Instead, we construe Gray's

---

[5] In this regard, we would note further that in construing claims brought under the FTCA, "'[i]t is the substance of the claim and not the language used in stating it which controls." Maynard v. United States, No. 3:CV-06-2331, 2008 WL 4453199, at *5 (M.D. Pa. Sept. 30, 2008) (quoting JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1264-1265 (11th Cir. 2000)). We interpret Gray's claim regarding Officer Blue's alleged failure to collect a razor issued to

claim to be that Corrections Officer Blue, in derogation of a federal prison policy, negligently failed to account for and retrieve a potentially lethal weapon in the form of a razor blade that had been provided to a federal inmate deemed sufficiently dangerous to qualify for placement in the SMU program at USP-Lewisburg. Gray further claims that this negligent provision of a razor to Andrew Bennett permitted that inmate to slash and seriously injure Gray during the course of an in-cell affray on August 14, 2009, which resulted in Gray being transported for outside medical assistance and the administration of at least 70 stitches to close his wounds.

We find that these allegations do not constitute a narrow claim of negligence per se, but rather a claim for negligence supported as an evidentiary matter by allegations that Officer Blue failed to adhere to mandatory prison policies governing

_____

Bennett to be a claim for negligence under general principles of tort law, and not a claim for negligence per se, based strictly on the alleged violation of a federal prison policy. Instead, we find that Gray's argument regarding the mandatory nature of the duty imposed upon Officer Blue with respect to razor collection within the SMU at USP-Lewisburg is simply that the policy was mandatory, and thus not a function that depended upon the exercise of discretion by this federal employee. Gray may also be arguing that Officer Blue's alleged failure to collect the razor, in violation of prison policy, is further evidence in support of his remaining negligence claim. It appears that the Third Circuit Court of Appeals similarly construed Gray's claim in this way, in finding that the BOP policy in question precluded the United States from relying upon the discretionary function exception in the FTCA as a defense to Gray's negligence claim. Nowhere in its opinion does the court of appeals state that Gray's claim is one for negligence per se.

the retrieval of razors. For this reason, we disagree with the United States that Gray's remaining claim is a negligence per se claim which must be dismissed because for the inapposite reason that there is no Pennsylvania law strictly analogous to the BOP policy in question.[6] We thus recommend that the district court decline to dismiss the plaintiff's remaining claim on the grounds that he has failed to state a claim upon which relief may be granted.

## B. Gray Has Adequately Pleaded a Claim for Negligence or Negligent Entrustment

The United States next argues that Gray has failed to state a prima facie claim for negligence, and that the record does not establish a prima facie case of negligence.

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court" and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." In re Orthopedic Bone Screw Product Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)). Where a federal court is presented with a claim brought under the FTCA, it applies the law of the state in which the alleged

---

[6]Finally, we are constrained to note that the interpretation of this claim urged by the government would lead to a curious result. If we embraced this view we would find that the mandatory clarity of the duty owed by the government in this case simultaneously compelled *both* denial of the FTCA discretionary function exemption, *and* dismissal of Gray's negligence claim. We simply cannot construe the appellate court's decision in this fashion.

tortious conduct occurred. 28 U.S.C. § 1346(b). In this case, the allegedly tortious conduct occurred in Pennsylvania, and thus we refer to Pennsylvania tort law to assess the extent of the United States' potential liability on Gray's remaining claim.

Under Pennsylvania law, in order to "establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Northwest Mutual Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (citing Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super Ct. 1994)). In accordance with this standard, a plaintiff bears the burden of proving by a preponderance of the evidence that the defendant's negligence was the proximate cause of his injury, Skipworth v. Lead Industry Association, 690 A.2d 169, 172 (Pa. 1997), which is defined as causation which was a substantial factor in bringing about the injury alleged, Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

Factors that Pennsylvania courts consider in determining whether a defendant's conduct is a substantial factor in bringing about harm to another are: "(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the point of the

harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (c) lapse of time." Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005). As another court has explained:

> A determination of legal causation, essentially regards "whether the negligence, if any, was so remote that as a matter of law, [the actor] cannot be held legally responsible for [the] harm which subsequently, occurred." Novak [v. Jeannette Dist. Mem. Hosp., 600 A.2d 616, 618 (Pa. Super. Ct. 1991) (citation omitted)]. Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of. Merritt v. City of Chester, 344 Pa.Super. 505, 508, 496 A.2d 1220, 1221 (1985).

Reilly v. Tiergarten Inc., 430 Pa. Super. 10, 15, 633 A.2d 208, 210 (1993).[7]

---

[7] We note that under Pennsylvania law, a negligent party may be liable in some cases even if there is an intervening cause of harm, as the defendant contends occurred in this case. In Frey the Pennsylvania Superior Court explained, referring to Restatement (Second) of Torts § 447, explained:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not

In this case, the United States argues that Gray's negligence claims necessarily fail because he has not alleged facts to show that the actions or inactions of prison personnel were a substantial factor in bringing about the plaintiff's alleged injuries, which resulted after Andrew Bennett slashed him with a razor in their cell. In short, the defendant maintains that even if Gray has adequately alleged that the Corrections Officer Blue breached some duty of care owed to him by failing to collect a razor that he furnished to Bennett, Gray has nevertheless failed to allege a causal connection between Officer Blue's alleged conduct and Gray's eventual injuries, or to allege that

_____

extraordinarily negligent.

From this statement of the law, it is easily seen that an intervening negligent act will not be a superseding cause relieving the original negligent actor from liability if that actor at the time of his negligent act should have realized that another person's negligence might cause harm; or, if a reasonable man would not regard the occurrence of the intervening negligence as highly extraordinary; or, if the intervening act is not extraordinarily negligent. "[Moreover], [w]hat the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of the cases be left to the jury."

Frey, 685 A.2d at 251 (quoting Restatement (Second) of Torts § 447 and Harvey v. Hansen, 445 A.2d 1228, 1234 (Pa. Super. Ct. 1982)). In this case, we find this principle of tort law has potential application, and forecloses the defendant's argument that Bennett's intervening act of slashing Gray necessarily immunizes the United States from tort liability.

Officer Blue's acts or omissions were a substantial cause in bringing about harm to Gray. We disagree.

The Restatement (Second) of Torts § 308 concerns negligence predicated on conduct that permits "improper persons to use things or engage in activities":

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308. One of the comments to the Restatement explains that:

> The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

Id. comment a. Pennsylvania courts have expressly adopted § 308, and have applied it in several cases involving claims of negligence and negligent entrustment. See Wittrien v. Burkholder, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009) (recognizing adoption of the Restatement); Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. Ct. 1998); Frey v. Smith, 685 A.2d 169 (Pa. Super. Ct. 1996). In Frey, the Superior Court reversed the dismissal of a negligent supervision case in which the complaint alleged that parents allowed their minor son unsupervised use of an air gun that he

later fired and injured another youth.  In <u>Johnson v. Johnson</u>, 600 A.2d 965 (Pa. Super. Ct. 1991), the Superior Court similarly concluded that a defendant father could be subject to liability under § 308 because he provided his minor son with a gun that the son used to fire a fatal shot during a hunting accident.  The Superior Court reached a similar conclusion in <u>Mendola v. Sambol</u>, 71 A.2d 827 (Pa. Super. Ct. 1950).  <u>Cf.</u> <u>Suchomajcz v. Hummel Chem. Co.</u>, 524 F.2d 19, 23-25 (3d Cir. 1975) (reversing grant of summary judgment on behalf of defendant manufacturer that supplied fireworks to a company that was alleged to have sold fireworks assembly kits, and in violation of federal court injunctions.  Relying on the specific knowledge that the fireworks manufacturer possessed regarding the purchasers allegedly unlawful conduct, the court found this claim sufficient to survive summary judgment.).

By way of contrast, in other cases in which claims have been brought under negligence and negligent entrustment theories, courts have found that plaintiffs have failed adequately to allege or prove proximate cause because the harm alleged was not sufficiently foreseeable.  <u>See, e.g.</u>, <u>Midgette v. Wal-Mart Stores, Inc.</u>, 317 F. Supp. 2d 550, 566 (E.D. Pa. 2004) (finding that the store that sold ammunition to shooter was not liable to victim on grounds of negligent entrustment, because there was no evidence to suggest that the store could have known that the shooter either

intended or was likely to use the ammunition he purchased to harm someone); <u>City of Phila. v. Beretta U.S.A. Corp.</u>, 126 F. Supp. 2d 882 (E.D. Pa. 2000) (dismissing lawsuit brought against gun manufacturers alleging that the gun industry's methods for distributing firearms constituted negligence and negligent entrustment, finding that the plaintiffs had failed to allege facts to show foreseeability of harm, and otherwise finding claims speculative).

In urging the district court to dispose of Gray's remaining claim either on the pleadings or on summary judgment, the defendant nevertheless acknowledges that the BOP has a duty to inmates to "provide suitable quarters and provide for [their] safekeeping, care, and subsistence." 18 U.S.C. § 4042. We are also specifically mindful that in this case, the United States Court of Appeals has found that BOP had implemented a mandatory policy at USP-Lewisburg requiring that "[a]ll razors will be accounted for and disposed of at the end of the shower." As alleged in the complaint, and as strongly suggested in the court of appeals' ruling and in the language of the policy itself, the rules governing the distribution and collection of razors are related chiefly, if not entirely, to ensuring that potentially deadly weapons do not remain in the hands of inmates housed at the facility.

We note further that Gray and the United States agree that the inmates designated for housing and programming within the SMU at USP-Lewisburg are

federal inmates who have proven themselves to have gang affiliations, or an institutional history typically marked by recalcitrant and violent misconduct. The United States also represents that BOP takes careful steps aimed at limiting the availability of weapons within a prison that houses approximately 1,200 inmates whose conduct within federal prison has resulted in their transfer to the highly restrictive SMU, although the United States acknowledges that these efforts are not entirely successful.

Mindful of this factual and legal context, we find that on the particular facts of this case, the plaintiff has adequately articulated a claim for negligence based upon Officer Blue's alleged failure to retrieve a razor from Andrew Bennett, which was later used in the bloody assault against Gray. Guided by the discussion above regarding the nature of proximate cause under Pennsylvania law, and Pennsylvania's recognition that claims of negligence may, in appropriate cases, be predicated upon a theory of negligent entrustment, we cannot agree with the defendant that Gray has failed to articulate a cognizable negligence claim.

In this case, Gray has alleged that a corrections officer supplied an inmate with a potentially deadly weapon; then failed to recover that item in accordance with mandatory prison procedures; which ultimately resulted in a dangerous inmate remaining in possession of an instrument that was subsequently used in a calculated

and vicious assault against his cell mate, with whom he was confined for 23 hours per day, and with whom he was reportedly having a conflict, a conflict that the inmates allegedly reported to staff had reached a violent climax. The defendants has not pointed the court to any analogous case in which federal courts have dismissed an inmate's FTCA claim based upon even remotely similar facts. In our assessment, Gray's negligence claim is adequately pled, and is predicated on the breach of a recognized duty, that resulted in the plaintiff suffering grave harm that was foreseeable. We disagree with the defendant's rhetorical assertion that the proximate cause of Gray's injuries was strictly limited to Andrew Bennett's tortious conduct. As Frey explained, under Pennsylvania law a plaintiff may demonstrate proximate cause against a party even if there may be other intervening causes of the harm. See fn. 6, supra. In sum, Gray has adequately pled a claim in tort, and the claim should not be dismissed on the pleadings.

## C. The Record Contains Disputed Issues of Fact that Make Summary Judgment Unwarranted

Finally, the United States argues that if the court declines to dismiss the complaint on the pleadings, it should nevertheless enter summary judgment in the government's favor because the record fails to establish a prima facie case of negligence. Upon consideration, we find that although the record provided by the

parties is not particularly robust, there is sufficient evidence to support the plaintiff's remaining claim, and a clear dispute in the record exists with respect to the parties' versions of events. The plaintiff has submitted a declaration in which he squarely disputes certain of the defendant's factual assertions, and provides sufficient evidentiary support for his remaining claim to survive summary judgment. (Doc. 60, Ex., Declaration of Lenelle Gray.) Although the United States dismisses Gray's declaration as merely "self-serving," we find that it is adequate to create a disputed issue of fact in a case in which the government relies in large part on similarly self-interested declarations, including a declaration of Corrections Officer Blue.

Relying on its view of the record at the time it filed its brief, the United States contends that summary judgment is warranted:

> because the record establishes: (1) Gray was the initial possessor of the razor blade that Bennett used to slash his face, and Gray was the instigator of the incident of August 14, 2009; (2) Correctional Officer Blue had a method in place to ensure that he inspected and collected an intact razor from every inmate he provided one to; (3) if any inmate had refused to return a razor to Correctional Officer Blue, a lieutenant would have been notified and the inmate would have received an incident report; (4) Bennett received no incident reports at USP Lewisburg prior to the incident of August 14, 2009; and (5) although staff at USP Lewisburg follow procedures to limit inmates' ability to possess weapons, they frequently find homemade weapons on inmates' persons, or concealed throughout the institution; and (6) inmates are creative in finding ways to circumvent procedures at USP Lewisburg to manufacture and conceal homemade weapons.

(Doc. 56, at 24-25.)   Upon consideration, we do not agree that the record "establishes" all of these facts, and we do not agree that the facts that the United States would have interpreted in its favor in this case warrant summary judgment in any event.

As a threshold matter, the evidence does not, in fact, "establish" that Gray was the instigator of the August 14, 2009 attack.  To the contrary, although Bennett later told a disciplinary hearing officer this version of the fight, Officer Blue stated that Bennett initiated the altercation, as did Gray.  Although there may be evidence that the United States could advance in support of a defense that Gray instigated the fight, there is clearly evidence suggesting otherwise, including evidence from Corrections Officer Blue himself.

To the extent the United States is arguing that Gray's claims fail based upon Officer Blue's own declaration regarding his method of ensuring that he recovered all razors distributed to inmates, and that he would have notified a lieutenant if a razor was later not accounted for, Blue's representations in this regard do not foreclose Gray's claim.  In response to the motion for summary judgment, Gray has submitted a declaration in which he swears that during the few weeks he was celled with Andrew Bennett, he witnessed Bennett receive a razor from Officer Blue and never return it.  (Doc. 60, Ex., Declaration of Lenelle Gray.)  Gray further declares

that he saw Bennett give Officer Blue something that appeared to be a razor or an imitation of razor, while keeping the original. (Id.) Blue claims that after this act of sleight of hand, Bennett said to him, "I beat [Blue] this time, I got him." (Id.) Although we realize that Officer Blue has submitted a declaration in which he attests to his usual practice and procedure for distributing a collecting razors in Z-Block three days a week, that declaration does not absolutely foreclose Gray's claim, as there is evidence in the record that Bennett had obtained a razor blade while housed on Z-Block, something that Gray swears occurred while the two men were housed together. We find a disputed issue of fact with respect to whether Officer Blue did, in fact, fail to retrieve the razor from Bennett that was subsequently used to assault Gray.[8]

---

[8] The United States urges the court to disregard Gray's declaration, or find that the declaration is insufficient to create a triable issue of fact. We acknowledge the cases upon which the defendant relies standing for the proposition that a party must come forward with more than self-serving conclusions or mere denials in order to defeat a summary judgment motion supported by documentary evidence. But in this case, Gray's declaration swears to facts that he claims to have witnessed first-hand, which contradict Officer Blue's somewhat general attestations regarding his normal procedures for distributing and collecting razors. We find that although there is clearly an issue of credibility presented by these competing affidavits, and allow that there may be reason to doubt Gray's belated declaration, we do not believe that the court should utterly disregard the evidence, or the existence of disputed factual issues relevant to Gray's claim. Instead, we believe that Gray's and Blue's declarations, together with the other somewhat contradictory evidence that the government has submitted regarding the incident on August 14, 2009, creates a triable issue in this case.

Regarding causation, the United States argues that it is entitled to summary judgment "because the undisputed record establishes that there is evidence that Gray initiated the assault and that he was the initial possessor of the razor blade used to slash his face." (Doc. 56, at 25.) We fully agree that "there is evidence" that could show that Gray initiated the assault. But as we noted above, this evidence is hardly conclusively established, and is in fact placed squarely in dispute by both Gray and Officer Blue – the two other individuals other than Bennett who were present when the fight erupted. If anything, the majority of the evidence indicates that Bennett had the razor blade; the only evidence to the contrary is supplied by Bennett himself.

The United States' remaining arguments regarding the asserted absence of causation in this case are just that – arguments – and do not compel entry of summary judgment in this case. We have already found that the plaintiff has adequately alleged causation and the foreseeability of harm with respect to his remaining tort claim. We likewise find that the disputed evidence in the record relevant to this claim, taken in the light most favorable to the plaintiff as the non-moving party, creates a triable issue with respect to his single tort claim, based upon Officer Blue's alleged negligence in failing to retrieve a razor that he provided to Bennett as part of his duties, and in contravention of mandatory prison procedure.

## VI.   RECOMMENDATION

Accordingly, for the reasons more fully explained above, IT IS HEREBY RECOMMENDED THAT the United States' motion to dismiss the complaint, or alternatively for summary judgment on the plaintiff's single remaining tort claim (Doc. 51.), should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge

Dated: March 28, 2013