**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LENELLE GRAY, | : | Civil No. 1:10-CV-1772 |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I.** **INTRODUCTION**

Lenelle Gray, a federal inmate in the custody of the Bureau of Prisons, brought the above-captioned action against the United States of America pursuant to the Federal Tort Claims Act. Gray's claims arise from an August 14, 2009 incident at the United States Penitentiary in Lewisburg, Pennsylvania, during which Gray was slashed with a razor by his cell mate, Andrew Bennett, resulting in Gray sustaining multiple lacerations on his face and torso, which required dozens of stitches to close. Gray alleges that the United States is liable for this attack, arguing that prison personnel were negligent in furnishing Gray's cell mate with the razor that was ultimately used as weapon, and in failing to collect the razor in accordance with

mandatory prison policies governing the provision and collection of razors given to inmates for shaving.

This matter now comes before the Court on the plaintiff's motion for summary judgment on Gray's claims, which seeks judgment as a matter of law in favor of the plaintiff on this negligence claim. As we have previously noted for the parties, this case presents a factual dispute which must be resolved through trial, and does not entail a purely legal question that is amenable to a summary judgment disposition on an undisputed factual record. Accordingly, for the reasons that follow, we recommend that this motion be denied.

## II. FACTUAL BACKGROUND

We have previously detailed the factual background of this case in our prior Report and Recommendation, which found that disputed issues of material fact precluded summary judgment for the defendant. (Doc. 65) At that time we noted that the plaintiff, Lenelle Gray is in federal custody following his conviction in the Northern District of Ohio for offenses relating to using a firearm in relation to a drug trafficking crime. Gray was sentenced to an aggregate term of imprisonment of ten years, ten months for this conviction, and is scheduled to be released from his federal sentence on October 5, 2015. On August 14, 2009, Gray was confined in the special management unit at the United States Penitentiary in Lewisburg, Pennsylvania.

USP-Lewisburg began accepting inmates into a "special management unit" program in 2009.  Between 2002 and 2009, the SMU program was confined to one housing unit at the prison, which held approximately 100 inmates who were participating at any given time.  Federal inmates may be designated for SMU programming if they have participated in disruptive geographical group or gang-related activities; if they had a leadership role in disruptive geographical group or gang-related activity; or if they have a history of serious or disruptive disciplinary infractions while incarcerated.  In 2009, the Bureau of Prisons expanded the SMU program at USP-Lewisburg and it became an institution-wide program, which currently houses approximately 1,200 inmates who are participating in the SMU program.  The prison also has approximately 200 inmates who are in general population who serve as a work cadre for the institution.

Gray and another inmate, Andrew Bennett, were designated for SMU assignment and were both housed at USP-Lewisburg in 2009.  On August 14, 2009, Gray was housed with Bennett in Z-Block at USP-Lewisburg. Gray and Bennett were both assigned to a cell on the first floor of the Z-Block from June 18, 2009, through the day of the August 14, 2009, assault and were housed in the same cell, Z-121, from July 27, 2009, through August 14, 2009.

Correctional Officer Scott Blue was assigned to the Z-Block evening watch as the First Floor Number One Officer, where Gray and Bennett were housed, from June 21, 2009, through September 21, 2009. Inmates in the SMU at USP-Lewisburg are permitted to use razors to shave three times per week. Correctional Officer Blue was responsible for passing out razors to the inmates in the Z-Block on Mondays, Wednesdays, and Fridays. Officer Blue has submitted a declaration in which he attests that it was his practice to walk down the range on the cell block with a box of razors on a cart and stop at each cell to ask the inmates if they wanted a razor to shave. Officer Blue represents that when he would distribute and collect razors, he would carry with him a list of inmate names on a form referred to as a "shower sheet." Officer Blue would provide a razor to an inmate and then place a check mark beside the inmate's name on the shower sheet. Approximately one hour later, Officer Blue would reverse this process, and collect a razor from each inmate who received one. Each time an inmate would return a razor to him, it was Officer Blue's practice to make certain that the blades were intact and to place an "X" beside the inmate's name who returned the razor. According to Officer Blue, he cannot recall any occasion when he was unable to collect all of the razors he passed out. However, if an inmate had refused to return a razor, Officer Blue states that he would have notified a lieutenant, and an incident report would have been issued.

Gray alleges that he and Bennett notified a correctional officer on the morning of Friday, August 14, 2009, that they were not getting along, that they needed to be separated, and that Bennett was going to harm Gray. According to Gray, the correctional officer responded that there was nothing he could do to address the situation, other than to notify the lieutenant. The lieutenant never came to speak with either Gray or Bennett about the issue. Later that same day, Gray and Bennett notified Officer Blue that they were continuing to have problems and that they wanted to be separated before Bennett harmed Gray; according to Gray, Bennett told Officer Blue that he wanted to be separated from Gray before he did "something stupid and hurt somebody." Upon receiving this information, Officer Blue told the inmates that the lieutenant had stated that he would have to wait until Monday to address the celling issue, when the Unit Team returned.[1] Gray reiterated to Officer Blue the seriousness of the situation, and emphasized that he felt in imminent danger being confined with Bennett, who was repeatedly making threats against him.

On the evening of August 14, 2009, shortly after 6:30 p.m., and apparently after Gray and Bennett had notified him that they were at risk of having a physical altercation, Officer Blue was handing out razors to inmates who wished to shave.

---

[1] In the SMU, inmates are confined to their cells for 23 hours per day, with one hour allotted for outside recreation in a cage. (Doc. 1, at 3)

When he arrived at Gray's and Bennett's cell, Officer Blue asked whether the men wanted razors; Gray indicated that he did.[2] When Officer Blue opened the food slot to the inmates' cell, Bennett struck Gray in the face with a razor, and the men immediately began to exchange blows and to wrestle. Officer Blue closed the food slot and called for assistance to help break up the fight. He then opened the floor range door to allow responding staff into the unit.

Correctional Officer Justin Foura was assigned to the second floor of Z-Block at USP-Lewisburg during the evening watch shift. Officer Foura responded to Officer Blue's assistance call regarding the fight between Bennett and Gray. When he arrived at the cell, Officer Foura observed that Gray and Bennett were standing face to face, and both men were covered in blood. Gray was bleeding from his face and the left side of his stomach, and was seen holding a rolled up newspaper in the form of a night stick. Officer Foura ordered the men to separate and get down on the floor, but according to his version of events, neither inmate moved. The officers dispensed pepper balls into the cells, releasing chemical agents. Thereafter, the inmates submitted to restraints. During the altercation, Officer Foura observed Bennett flush a razor blade down the toilet.

---

[2] In his declaration, Officer Blue attested that Gray indicated that both he and Bennett wanted razors. (Def. SMF ¶ 21.)

Lieutenant Tracey Hooper was assigned to Evening Watch Operations at USP-Lewisburg on August 14, 2009. Lieutenant Hooper also responded to Officer Blue's call for assistance. Lieutenant Hooper attests that when he arrived at cell 121, he witnessed the inmates engaged in a fight, and ordered them to submit to handcuffs. Lieutenant Hooper states that the men refused, and that Bennett subsequently attempted to block the food slot with a mattress. In spite of this, however, Lieutenant Hooper represents that he was able to launch multiple rounds into the cell with a pepperball launcher, which eventually caused the inmates to comply with demands to separate and submit to restraints. Lieutenant Hooper also saw Bennett flush a weapon down the toilet during this incident.

According to Gray and medical reports that the parties have submitted, during this affray, Gray sustained multiple lacerations to his torso and face, of varying degrees of severity. In total, Gray avers that his wounds required 70 stitches, and he was taken from USP-Lewisburg to an outside hospital after prison medical staff concluded his injuries were too serious to be treated within the institution.

In this lawsuit, Gray alleges that Officer Blue – the corrections officer who had sole responsibility for distributing and collecting razors on Z-Block – negligently permitted Bennett to obtain and retain the razor that was ultimately used in the August 14, 2009 incident. In the complaint, Gray avers that in late July 2009, a

corrections officer was slashed by an inmate who had secreted a razor in his cell. Following this incident, corrections officers subjected Z-Block to a thorough search in order to find and remove weapons and contraband. Gray alleges that sometime after this unit-wide search was undertaken, Officer Blue negligently permitted Bennett to retain the razor that he ultimately used to inflict multiple lacerations on Gray during their affray on August 14, 2009.

Thus, one principle and disputed factual issue in this case relates to the source of the razor used by Bennett in this assault. For his part, Gray has submitted a declaration in which he swears that Bennett obtained the razor due to Officer Blue's inattention in accounting for razors. (Doc. 60, Ex., Declaration of Lenelle Gray) In contrast, Corrections Officer Blue has submitted a declaration describing his careful practice of accounting for all razors which he dispensed, and explaining that he cannot recall any time during which Bennett was provided a razor but did not return it. Officer Blue further attests that he would have notified a lieutenant if an inmate had ever refused to return a razor.

Yet another disputed factual issue relates to which inmate instigated this affray. Some eyewitness appear to have described Bennett assaulting Gray, and following the fight, Bennett was issued an incident report that charged him with a Code 101 violation of assault and a Code 104 violation of possession of a weapon. During his

hearing on these charges, Bennett claimed that Gray had first attacked him with the razor blade, which was initially in Gray's possession, but that somehow Bennett managed to take the razor blade from Gray during the fight and thereafter managed to slash Gray's face with it. Regardless of his characterization of the fight, Bennett was found guilty of the charged offenses and was sanctioned with prison discipline as a result.

Further complicating this factual scenario is the simple reality that inmates within the institution routinely demonstrate creativity in making weapons from various sources, and that staff at the prison have found weapons in a variety of places, including on the person of inmates, in cells, in common areas throughout the institution, education areas, dining halls, chaplain, and health services. Although BOP attempts to control the production and availability of weapons through a variety of techniques, the Bureau is not always successful in preventing the introduction of weapons within its institutions, and it is evident that not all failures in this regard rise to the level of negligence given the ingenuity displayed by inmates in finding and concealing weapons.

### III.    <ins>PROCEDURAL HISTORY</ins>

Gray initiated this lawsuit on August 24, 2010. (Doc. 1) In the complaint, Gray alleged: (1) that BOP officials were negligent in failing to separate or protect

him from Bennett after being notified by the inmates on multiple occasions that they were having difficulty and that a fight was imminent; and (2) that Correctional Officer Blue was negligent in failing to collect a razor from Bennett at some point prior to August 14, 2009, which Bennett then used to slash Gray multiple times during the August 14, 2009 affray.

On January 26, 2011, the United States moved for summary judgment on these claims. (Doc. 20) On August 17, 2011, a magistrate judge previously assigned to this action issued a report and recommendation in which he recommended that the motion for summary judgment be granted as to the first claim, but denied as to the second claim. (Doc. 31) The district court subsequently entered an order granting summary judgment in favor of the United States on both claims, finding that the plaintiffs FTCA claims were barred by the discretionary function exemption, which provides that the FTCA's waiver of sovereign immunity does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The district court found that the discretionary function exemption barred Gray's claims regarding both the alleged failure to separate Gray and Bennett, and Officer Brown's alleged failure to retrieve a razor blade from Bennett on a date prior to August 14, 2009.

Gray appealed this decision to the United States Court of Appeals for the Third Circuit. In a non-precedential decision, the appeals court held that the collection of razors dispensed to inmates was not a matter of discretion, but was instead controlled by BOP policies mandating the collection of razors in accordance with certain express procedures. Accordingly, the Third Circuit held that the discretionary function exemption of the FTCA did not apply to Gray's claims against the United States based upon Officer Blue's alleged negligence. Thus, the appeals court vacated the district court's decision with respect to Gray's tort claim based upon Officer Blue's conduct, but otherwise affirmed the dismissal of Gray's claim against the United States based upon the alleged failure of correctional officers to separate Gray and Bennett. See Gray v. United States, No. 11-3918, 2012 WL 2384251 (3d Cir. June 26, 2012).

With the matter remanded to the district court, the United States once again moved to dismiss the complaint, or, in the alternative, for summary judgment on Gray's remaining claim regarding Officer Blue's alleged negligence in failing to recover a razor from Bennett. (Doc. 51) Finding that Gray had identified disputed issues of material fact that precluded summary judgment in this case, we recommended that the district court deny the defendant's renewed dispositive motion.

(Doc. 65) The district court subsequently adopted this Report and Recommendation. (Doc. 66)

Apparently emboldened by this outcome, Gray has now filed his own motion for summary judgment, arguing that this disputed evidence, which precluded summary judgment for the defendant, somehow compels summary judgment for the plaintiff. (Doc. 83, 84)

For the reasons set forth below, we disagree, and recommend that this motion also be denied in light of the disputed material issues of fact that abound here.

## IV. DISCUSSION

### A. Summary Judgment - Rule 56

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). In order for an issue to be genuine, "all that is required is that sufficient

(Doc. 65) The district court subsequently adopted this Report and Recommendation. (Doc. 66)

Apparently emboldened by this outcome, Gray has now filed his own motion for summary judgment, arguing that this disputed evidence, which precluded summary judgment for the defendant, somehow compels summary judgment for the plaintiff. (Doc. 83, 84)

For the reasons set forth below, we disagree, and recommend that this motion also be denied in light of the disputed material issues of fact that abound here.

## IV.   DISCUSSION

### A.   Summary Judgment - Rule 56

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). In order for an issue to be genuine, "all that is required is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this initial requirement is met, the burden then shifts to the non-moving party to demonstrate the existence of a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable interests in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott, 550 U.S. at 380).

**B.    The Record Contains Disputed Issues of Fact that Make Summary Judgment Unwarranted**

In this case we find that a clear, and clearly material, dispute exists in the record with respect to the parties' versions of events. For example, the parties dispute whether Gray instigated this confrontation. On this score, some eyewitness evidence suggests that Bennett struck first, a fact which would support Gray's claims. However, Bennett is also alleged to have stated that Gray instigated this assault, a claim which, if proven, would undermine Gray's complaint.

Similarly, the parties contest whether Officer Blue failed to account for the razor blades he distributed to inmates. For his part, Officer Blue has submitted a declaration regarding his method of ensuring that he recovered all razors distributed to inmates, and has stated that he would have notified a lieutenant if a razor was later not accounted for. In response, Gray has submitted a declaration in which he swears that during the few weeks he was celled with Andrew Bennett, he witnessed Bennett receive a razor from Officer Blue and never return it. Gray further declares that he saw Bennett give Officer Blue something that appeared to be a razor or an imitation of razor, while keeping the original. Blue claims that after this act of sleight of hand, Bennett said to him, "I beat [Blue] this time, I got him." On this conflicting evidence,

we find a disputed issue of fact with respect to whether Officer Blue did, in fact, fail to retrieve the razor from Bennett that was subsequently used to assault Gray.

Where, as here, an FTCA negligence claim involves resolution of disputed, material issues of fact it is well-settled that summary judgment is inappropriate. See Moyer Packing Co. v. United States, 567 F. Supp. 2d 737, 761 (E.D. Pa. 2008). Such factually contested claims cannot be resolved as a matter of law, through summary judgment. Rather, they must be determined as a matter of fact, through trial. Since this case presents just such a factual dispute, summary judgment is inappropriate for either party, and the instant motion for summary judgment should be denied.

## V.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED, that the plaintiff's motion for summary judgment (Doc. 83) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of February, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge